McKENZIE vs. ROLESON et al.

WILLS: *Construction of conflicting clauses.*

Where, in the execution of a power under a will an *invincible* repug-
nancy appears as between two provisions, or as between the will
and codicil, the latter clause should prevail over an earlier one, if
not inconsistent, all things being considered, with a reasonable in-
tendment as to which of the conflicting clauses, addressed to the
judicial mind, is most likely to effect the intention of the testator.

APPEAL from *Cross* Circuit Court.
Hon. W. H. HAZELDINE, Circuit Judge.
*Adams & Dixon*, for appellant.
*Brown & Lyles*, for appellees.

SEARLE, J. The appellees brought their complaint in
equity to the November term, 1871, of the Cross circuit court,
for the recovery of certain real property situate in the town of
Wittsburg, in Cross county. The appellant answered, alleg-
ing title in himself, to which answer appellees demurred. The
court sustained the demurrer, and rendered a decree in favor
of the appellees, from which the appellant, refusing to answer
further, appealed to this court.

The facts material to the disposition of the cause here, that
are alleged in the complaint and not denied by the answer,
and that are alleged in the answer and conceded by the de-
murrer, are, in substance, the following:

Isaac Wafford, who was owner in fee of the property in con-
troversy, a short time previous to his death, duly made and
published his last will and testament, on the 6th day of May,
A. D. 1848, and his codicil thereto, on the 7th day of July,
A. D. 1849. In due time, after the death of Wafford, the will,
with the codicil thereto, was duly probated and admitted to
record, on the 30th day of August, 1849, and letters testa-

mentary were issued to Samuel L. Austill, the person named in the codicil to the will as executor.

The rights of the parties in this case depending chiefly upon the construction given to this will and codicil, so much of them will be set forth in this statement as is material to the determination of the issues presented.

The third item of the will is as follows: "I will and desire, immediately after my death, that my children, or some one of them, select four negroes out of my stock of negroes, and dispose of them in the following manner, viz: to have them valued, each separately, and then for them to be drawn for my children, or some one to draw for them whom they may select, or for their legal representatives; the one that may be drawn in the name of Caroline Austell, my youngest daughter, I will to her absolutely; the one that may be drawn in the name of Juliana Nickels, my second daughter, I will to her absolutely; and the one that may be drawn in the name of my son James H. Wafford, I will to him absolutely; and the one that may be drawn in the name of Delia C. Fergurson, my eldest daughter, I will also to my son James H. Wafford, in trust for the use and benefit of my said daughter, Delia C. Fergurson, the *trust fund* or property above mentioned to be managed by my son, James H. Wafford, as trustee as aforesaid, in the manner hereinafter to be mentioned by me; and each one is to account to the other, who may draw the most valuable negro, making each equal in value."

The sixth item of the will, after making other devises of personal property, devised as follows, to-wit: "I will that my children agree among themselves, and sell on such time or for cash (a majority agreeing to sell), as they may think best, the residue of all my property, not above specifically devised, both personal and real; and the proceeds thereof to be divided

into four equal parts, which I will and bequeath to the parties, and in the same manner and for the same purposes and uses that I have set forth and mentioned in the third clause or item of this will. In order that no misconstruction shall be placed upon the clause and language therein set forth and used, I make this plain statement, that I will my daughter D. C. Fergurson's portion be equal to each of my other children's; that I have willed it to my son James H. Wafford, in trust for her, during her natural life, and then, after her death, to descend to her children, heirs of her body, absolutely; and the negroes thus willed by me for her use, I will that my son James H., trustee as aforesaid, hire out annually, and the moneys that may be, as a portion from my estate, to be kept at interest, and apply the proceeds of the hire of said negroes and the interest aforesaid to her comfort and benefit, during her natural life, and thereafter, the residue to her children as aforesaid, equally and absolutely. I appoint no executor for the reason that my children are all of age and can legally wind up my estate without the expense of an administration."

The codicil to the will, after making some changes in the provisions of the will in relation to the devises to testator's wife, is as follows: "I make this other change or alteration in the last clause of my will aforesaid, wherein I appoint no executor; that is, I constitute and appoint my son-in-law Samuel L. Austell, of St. Francis county, Arkansas, the sole executor of my last will and testament aforesaid, of date the 6th of May, 1848, and desire him to execute the same in every particular as therein I· have set forth and expressed, with the provisions of this codicil, which I make and ordain as a part of the same," etc., etc.

The property in litigation in this suit was a part of the real property, to which the sale, as directed to be made in the

above quoted portions of the will, had reference. James H. Wafford, one of the devisees of the will, conveyed his right, title and interest in the property in controversy, to Britton Roleson, one of the appellees in this suit, and Thomas H. Mc-Crary, on the 27th day of February, 1871 ; Delia C. Fergurson, another one of the devisees of the will, became discovert by the death of her husband in the year 1852, and died on the 16th day of March, 1869, leaving surviving her, her children and heirs at law, Thomas H. McCrary, Marietta W. Fergurson and Caroline Fergurson (who afterward intermarried with Benjamin F. Scott); and these last named persons, heirs of Mrs. Fergurson, conveyed their right, title and interest in the property to Britton Roleson and Thomas H. McCrary, on the 28th day of February, 1871; and McCrary conveyed his interest to the appellees, B. C. Brown and O. P. Lyles. The appellees claimed title to one-half of the property described in their complaint, by virtue of the will and the above mentioned conveyances. The appellant claimed title to the same property by virtue of the will and the following conveyances and facts, as set forth and pleaded in his answer :

That Samuel L. Austell, as executor of said will, etc., and as authorized so to do by the will and codicil, on the 23d day of August, 1853, and on the 17th day of February, 1859, sold, and by his deeds of these dates, conveyed to one John Wilson, the property in the complaint described, which deeds were duly executed, acknowledged and recorded. That said Wilson died, leaving him surviving, his widow, Ann R., who intermarried with appellant; that said Ann R., during her widowhood, continued to occupy said property, the same being the homestead of the former husband, and no dower being assigned to her, until her said marriage with the appellant, since when she and her husband, the appellant, have had and held possession of the property; that the pos-

session of Wilson from the dates of said deeds, and after his death of his widow, and after her marriage with the appellant, of her and the appellant jointly, was adverse to all the world, under and by virtue of the conveyances and facts aforesaid, and the statute of limitation is set up in defense of his title.

The demurrer to the answer admitting the facts therein pleaded as true, questions their legal sufficiency to defeat a recovery by the appellees. The court sustained the demurrer and (the appellant declining to plead further) pronounced a final decree in favor of the appellees, upon the allegations of their complaint, to the extent of the one-fourth interest in the property claimed to be willed to the use and benefit of Delia C. Fergurson.

Before entering upon the consideration of the questions raised by the demurrer, we will notice briefly, the objection of appellants counsel to the interposition of a demurrer to an answer in an action in equity.

The code provides as follows: Where the facts stated in the answer are not sufficient to constitute a defense, a counterclaim or setoff, the plaintiff may demur. Section 121, Civil Code of Practice. Substantially, this provision is found in all or nearly all the new codes of practice adopted in the several states of the union; and the section itself is a literal copy of section 130 of the Kentucky Civil Code of Practice, and has been held, without question, by the courts of that state, as applicable alike to actions in equity and at law. Newman on Pleading and Practice, 677.

The demurrer raised two principal questions; the first, relating to the validity of the appellant's title by virtue of the conveyances and facts pleaded in his answer and as briefly set forth in the statement of this case, and this without any reference to the statute of limitations; the second, relating to the statute of limitations, as a bar to the appellee's action.

McKenzie vs. Roleson et al.

The first of the above questions will be first noticed.

The appellant's right to the property in controversy depends chiefly, if not entirely, upon the validity of the sale by the executor of the last will and testament of Isaac Wafford, deceased, to Wilson, and the validity of this sale depends upon the power of the executor to sell. To determine or ascertain the power of the executor in the premises, we must go to the will and codicil of his testator and discover therefrom, by a legal interpretation thereof, the intention of the testator in relation : 1. As to whether there should be a sale of the property or not ; 2. As to who should sell.

1. As to whether there should be a sale of the property or not.

The will, as it originally stood, gave the testator's children the power to sell the property. But it is suggested or contended by appellee's counsel, that though they had the power to sell under the original will, it was discretionary with them whether they sold or not. The words of the will (sixth item of original will) are : "I will that my children agree among themselves, and sell on such time or for cash (a majority agreeing to sell) as they may think best, the residue of all my property, not above specifically described, both personal and real, and the proceeds thereof to be divided into four equal parts, which I will and bequeath to the parties, and in the same manner, and for the same purposes and uses, that I have set forth and mentioned in the third clause or item of this will." It is clear that the substantive part of this provision is the sale of the property "not specifically devised," and the division of the proceeds thereof among testator's children. Without a sale there could be no division of proceeds, for the simple reason that there could be no proceeds ; and the will nowhere provides for a division of the property itself, in the event that no sale was made. The testator seems to have in-

tended, not that the property of which he died seized, except such of the personalty as was specifically devised, but only the proceeds of the sale thereof, should be enjoyed by his children. It would follow, then, that as to the sale, there was no discretion given. The property must be sold at all events. The discretion was extended only to the matter of selling " on such time or for cash as they (the children) may think best; " and in the exercise of this discretion, a majority was to control. We think this view is further supported by the fact that in the after provisions of the will, as to the duty of James H. Wafford, the trustee of Delia C. Fergurson, no mention was made of his managing her interest in the lands or paying over to her the rents and profits thereof. But he was directed to hire out the negroes annually, and to pay this hire and the interest on any " moneys which may be as a part of my estate, to the use and comfort of the said Delia C. Fergurson, during her natural life." What moneys were here meant by the testator ? It does not appear that any passed in specie by the will. He evidently had in view the moneys that should arise from these sales. Had the testator contemplated that it might so turn out that the property should not be sold, he certainly would have put the alternative, or the rents and profits of the real estate. But there is no such alternative provision to be found in the will; from which fact it must be inferred, conclusively, that his intention was, that his children or any one, carrying into effect the provisions of the will, should have no discretion as to whether or not there should be a sale, but, at most, only as to the terms of the sale. The intention of the testator then was that the property *should be sold* and the proceeds thereof divided among his children.

2. The intention of the testator as to who should make the sale.

No doubt the testator originally intended, as appears from

the will as it originally stood, that his *children* should make sale of the property ; and his reason for so providing was, that " his children were all of age and could legally wind up his estate without the expense of an administrator." After this he seems to have changed his mind ; and, by his codicil, he appoints an executor and directs him to execute the will " in every particular." The words of the codicil relating to the executor are as follows :   "I make this other change or alteration in the last clause of my will aforesaid, wherein I appoint no executor, that is, I constitute and appoint my son-in-law, Samuel L. Austell, of St. Francis county, Arkansas, the sole executor of my last will and testament aforesaid, of date of the 6th of May, 1848, and desire him to execute the same in every 'particular as therein I have set forth and expressed, with the provisions of this codicil, which I make and ordain as a part thereof."

The sale of the property not specifically devised was a particular of the will, and a very important particular. The will, as it originally stood, provided that the children should execute this particular. Now, the inquiry is, was this provision revoked by the testator when he directed, in his codicil, that the executor should execute his will in " every particular ; " or, in other words, was it the testator's intention, from a proper construction of the whole testament, to embrace by the expression, "in every particular," found in the codicil, the particular of sale, as provided in the will as it originally stood ? If so, the executor clearly had the power to sell. But there is no expression in the will or codicil that would indicate such intention, save the repugnancy between the will directing the children to sell, and the codicil directing the executor to execute the will "in every particular." This repugnancy is what is denominated in law an invincible repugnancy ; for the property *must* be sold, and *both* cannot sell. In such cases of re-

pugnancy, where it is impossible to determine from his expressions which clause the testator *did* intend to prevail, other things being equal, the latter clause should prevail over an earlier one.    1 Red. on Wills, 448–450, secs. 13 ; 451, secs. 13, 14 ; *Morrell v. Sutton*, 1 Phillips, 532.

And in regard to the degree of certainty of intention to be gathered from the will, as applied to the subject matter, which will justify the rejection of the one of two conflicting provisions, no satisfactory, universal rule can be laid down.    The most that can be said is, that it must be that degree of certainty which satisfies the judicial mind, and which indicates that course as being the safest and most likely to effect the intention of the testator, all things considered.    1 Red. on Wills, 449.    Now the subject matter to which these conflicting provisions relate is the sale of the property ; and by an adherence to the first mentioned of the above rules, it would seem that the executor was the party authorized to sell, as the direction in the codicil that he should execute the will " in every particular " is the latter one in point of time.    But we think we are not driven to the force of the mere relative positions, as to the time when made, of the two conflicting provisions, to determine which of them shall prevail, or which of the parties shall sell.    We have, besides this, reasonable intendment to guide us in selecting which of the two provisions is most likely to effect the intention of the testator, all things considered.    The object to be accomplished is the sale of the property.    Is it not more likely that this object could be more effectually and advantageously accomplished by a single person, the executor, than by the concurrence of three out of four persons with clashing interests, and, of course most likely, with different views as to terms of sale, and probably scattered in different parts of the country ?    Is it not more likely that purchasers from one who could at once perform his part of the

contract of sale could be more easily found than from four who must unite, or the purchaser take the risk of litigation by a conveyance of a less number than the whole? Could not every transaction relating to the sale, as contracting to sell, the payment and receiving the purchase money, the execution of papers, etc., as well as the division of the proceeds among the devisees, etc., etc., be had and accomplished easier and more satisfactorily by and with one than by and with four?

But it is suggested by appellee's counsel, that, if the direction of the testator, that the executor should execute the will "in every particular," operated as a revocation of the provision in the original will, that the chidren should sell, then did it also revoke the appointment of testator's son as trustee for his daughter, Mrs. Fergurson, and that this would require no more forced construction than the other. The counsel are mistaken in this; and for this simple reason, that the appointment of the trustee is not a "particular" of the will to be executed; it is a thing done. The sale of the property is a "particular" of the will not accomplished, but directed to be done. There is, certainly, no repugnancy between the provisions of the original will, appointing a trustee and defining his duties, and the provisions of the codicil appointing an executor and directing him to execute the will "in every particular." Indeed, it would be the duty of the executor, under this direction in the codicil, to recognize the trustee and place Mrs. Fergurson's portion in his hands. Failing to do this, he would fall so far short, in executing the will "in every particular." One other consideration we deem it proper to give a passing notice, and which is not without *some* weight in ascertaining the intention of the testator, as to the sale, and that is the acquiescence of the devisees or those interested in the estate for so long a time in the sales of the executor. The sales of the executor

commenced in 1850, and continued until after 1860. They were to many parties, were open and known to every body, and the vendees notoriously took possession of the property, and made valuable improvements upon it. Yet, the parties interested in the estate, made no complaint during all that time, while the sales were being made, nor since that time until 1871, when, part of them, assuming to be owners of an undivided part of the property, sold the same. The fact of this long acquiescence would seem to indicate a general understanding among the interested parties, that the executor had the power to sell under the provisions of the will and codicil.

From the above considerations, we think that the executor clearly had the power to sell, a power derived to him from the expressed intention of the testator as gathered from a proper interpretation of the will and codicil, a power that pertained to him by virtue of his office as executor. This sale, then, of the executor, as averred in the answer, was a valid one; and the appellant. who defends in right of his wife, to whose former husband the sale was made, as averred also in the answer, was rightfully in possession of the property in controversy. This being the case, the demurrer was improperly taken to the answer, and the court erred in sustaining the same and rendering a decree in favor of the appellees upon the allegations of their complaint. As to the statute of limitations, as pleaded in appellants' answer, it is unnecessary to consider it in this case.

For the above errors, the decree of the circuit court is reversed, and the cause remanded to that court with instructions thereto, to overrule the demurrer and proceed with the cause according to law, and not inconsistent with this opinion.